## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

|                          |     |                            |
|--------------------------|-----|----------------------------|
| ERNEST JOHNSON,          | )   |                            |
|                          | )   |                            |
| Petitioner,              | )   | Case No. 11-08001-CV-W-DGK |
|                          | )   |                            |
| v.                       | )   |                            |
|                          | )   |                            |
| TROY STEELE,             | )   |                            |
|                          | )   |                            |
| Respondent.              | )   |                            |

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Currently pending before the Court are Petitioner Ernest Johnson's "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" and Respondent's "Response to Order to Show Cause Why the Petition for Habeas Corpus Should Not be Granted." (Docs. 10, 16). Having carefully considered both parties' arguments and for the reasons stated herein, Petitioner's request is denied.

### Background[1]

On May 3, 1994, Petitioner Ernest Johnson ("Johnson") was charged with three counts of first degree murder, one count of armed criminal action, and one count of first degree robbery for actions related to the robbery of a Columbia-area Casey's convenient store during which Johnson allegedly beat three store employees to death with a hammer. (L.F. 39-45; Resp. Exh. 15).[2] On

---

[1] Much of this background is taken from Petitioner's very thorough Petition for Writ of Habeas Corpus (Doc. 10).

[2] In citing material in the record, the Court uses parallel citations, first citing to Petitioner's system of reference to the record below and then citing to Respondent's exhibits. Citation to Petitioner's system of reference will be reflected as follows: First Trial Transcript ("Tr. ___"); First Direct Appeal Legal File ("L.F. ___"); First Post Conviction Hearing Transcript ("1st PCR Tr. ___"); First Post-Conviction Legal File ("1st PCR L.F. ___"); Second Penalty Phase Trial Transcript ("2nd Sen. Tr. ___"); Second Direct Appeal Legal File ("2nd L.F. ___"); Second Post-Conviction Hearing Transcript ("2nd PCR Tr. ___"); Second Post-Conviction Legal File ("2nd PCR L.F. ___"); Third Penalty Phase Trial Transcript ("3rd Sen. Tr. ___"); Third Direct Appeal Legal File ("3rd L.F. ___"); Third Post- Conviction Hearing Transcript ("3rd PCR Tr. ___"); Third Post-Conviction Legal File ("3rd L.F. ___"). Any exhibits from the three jury trials will be designated as ("1st Exh. No. ___ at ___); ("2nd Exh. No. ___ at ___") and ("3rd Exh. No. ___ at ___") respectively. Any exhibits from the 3 post-conviction hearings will be referenced as

May 3, 1994, the State also filed its Notice of Intent to Seek the Death Penalty. (L.F. 46-48; Resp. Exh. 15).

Johnson's first jury trial commenced on May 10, 1995. (Tr. 471; Resp. Exh. 3). On the first day of the trial, the State dropped the armed criminal action and robbery counts. (Tr. 474-75; Resp. Exh. 3). On May 16, the jury found Johnson guilty on all remaining counts. (Tr. 2413-14; Resp. Exh. 11). The penalty phase commenced on May 17, 1995, and one day later, on May 18, the jury declared death as the punishment for each of the three murder counts. (Tr. 2432; Resp. Exh. 11; Tr. 2672-75; Resp. Exh. 12). On June 19, 1995, a Missouri state court sentenced Johnson to death by lethal injection. (Tr. 2704; Resp. Exh. 12; L.F. 707-09; Resp. Exh. 18).

Johnson timely appealed his sentence on June 19, 1995. (L.F. 713; Resp. Exh. 18). He also timely filed Rule 29.15[3] motions ("first 29.15 motions").[4] (1st PCR L.F. 13-150; Resp. Exh. 19). A Missouri state court conducted an evidentiary hearing on May 21, 1996 (1st PCR Tr. 1; Resp. Exh. 13) and denied post-conviction relief on all grounds on August 16, 1996. (1st PCR L.F. 225-34; Resp. Exh. 20).

The Missouri Supreme Court decided Johnson's consolidated appeal on May 26, 1998, affirming the murder convictions but vacating and remanding the death sentences because the penalty phase counsel was ineffective for failing to call an engaged expert witness to testify about Johnson's mental state. *State v. Johnson,* 968 S.W.2d 686, 699, 702 (Mo. 1998) (en banc) ("*Johnson I*").

---

("1st PCR Exh. No. ___ at ___"); ("2nd PCR Exh. No. ___ at ___"); (3rd PCR Exh. No. ___ at ____"); and Exhibits attached to this petition ("Exh. __ at __"). Citation to Respondent's material will reference Respondent's Exhibits 1-62.
[3] In June 1995, Rule 29.15 provided for the stay of the direct appeal while the 29.15 motion was litigated. *See* Historical Notes, Mo. R. Crim. P. 29.15. An appeal of the 29.15 motion was then consolidated with the direct appeal. The consolidated appeals approach was abolished by a rule revision in 1996 which provided that the 29.15 proceeding is litigated after the direct appeal has concluded. *See* Mo. R. Crim. P. 29.15(b).
[4] Johnson filed an amended 29.15 motion on December 28, 1995. (1st PCR L.F. 13-150; Resp. Exh. 13).

A second penalty trial commenced on March 8, 1999. (2nd Sen. Tr. 43; Resp. Exh. 25). On March 12, the jury assessed and declared death as the punishment for all three murder counts. (2nd Sen. Tr. 1378-83; Resp. Exh. 26). On April 19, 1999, a Missouri state court formally sentenced Johnson to death by lethal injection. (2nd Sen. Tr. 1394; Resp. Exh. 26; 2nd L.F. 258-61; Resp. Exh. 28).

On April 28, 1999, Johnson again filed a timely notice of appeal. (2nd L.F. 262-63; Resp. Exh. 28). On June 13, 2000, the Missouri Supreme Court affirmed the death sentences. *State v. Johnson,* 22 S.W.3d 183 (Mo. 2000) (en banc) ("*Johnson II*"). The United States Supreme Court denied Johnson's petition for writ of certiorari on October 10, 2000. *Johnson v. Missouri,* 531 U.S. 935 (2000).

On October 30, 2000, Johnson filed a *pro se* 29.15 motion ("second 29.15 motion") (2nd PCR L.F. 1, 6-11; Resp. Exh. 34).[5] A Missouri state court held an evidentiary hearing on November 28, 2001 (2nd PCR Tr. 5; Resp. Exh. 34) and denied post-conviction relief on all grounds on March 22, 2002. (2nd PCR L.F. 421-62; Resp. Exh. 36).

Johnson filed a notice of appeal for his second 29.15 motion on May 1, 2002. (2nd PCR L.F. 466-69; Resp. Exh. 36). On April 22, 2003, the Missouri Supreme Court reversed the motion court's denial of Johnson's second 29.15 motion based on the United States Supreme Court's then recent decision in *Atkins v. Virginia,* 536 U.S. 304 (2002) and remanded for a new penalty phase trial. *Johnson v. State*, 102 S.W.3d 535 (Mo. 2003) (en banc) ("*Johnson III*"). Based on *Atkins*, the Missouri Supreme Court held that a defendant who can prove mental retardation by a preponderance of the evidence, as defined in Mo. Rev. Stat. § 565.030.6, cannot be subject to the death penalty. *Johnson III,* 102 S.W.3d at 536, 540. Because *Atkins* evidence existed but was not adequately presented during Johnson's second penalty trial, and because the

---
[5] Johnson filed an amended motion on March 19, 2001. (2nd PCR L.F. 2, 38-261; Resp. Exhs. 34, 35).

jury was not instructed that the death penalty cannot be imposed if a defendant is mentally retarded, the Missouri Supreme Court found remand was necessary. *Johnson III,* 102 S.W.3d at 541.

Johnson's third penalty trial commenced on May 4, 2006. (3rd Sen. Tr. 83; Resp. Exh. 42). On May 10, the jury returned its verdict assessing and declaring death on each count. (3rd Sen. Tr. 1815-18; Resp. Exh. 44). On June 12, 2006, the court sentenced Johnson to death by lethal injection. (3rd Sen. Tr. 1828-29; Resp. Exh. 44; 3rd L.F. 326-30; Resp. Exh. 46).

Johnson filed a timely notice of appeal on June 19, 2006. (3rd L.F. 331-32; Resp. Exh. 46). On February 19, 2008, the Missouri Supreme Court affirmed the death sentences. *State v. Johnson,* 244 S.W.3d 144 (Mo. 2008) (en banc) ("*Johnson IV*"). The United States Supreme Court denied Johnson's petition for writ of certiorari on October 6, 2008. *Johnson v. Missouri,* 555 U.S. 872 (2008).

Johnson filed a *pro se* 29.15 motion ("third 29.15 motion") on May 16, 2008. (3rd PCR L.F. 5-10; Resp. Exh. 55).[6] A Missouri trial court held an evidentiary hearing from June 29, 2009 to July 1, 2009. (3rd PCR Tr. 1, 764-65; Resp. Exhs. 53, 54). On September 16, 2009, the court denied post-conviction relief on all grounds. (3rd PCR L.F. 336-77; Resp. Exh. 57).

Johnson timely filed a notice of appeal on October 22, 2009. (3rd PCR L.F. 383-84; Resp. Exh. 57). On March 1, 2011, the Missouri Supreme Court affirmed the motion court's denial of 29.15 relief. *Johnson v. State*, 333 S.W.3d 459 (Mo. 2011) (en banc) ("*Johnson V*"). The Missouri Supreme Court denied rehearing on March 29, 2011. *See Johnson V*, 333 S.W.3d at 459.

Johnson now petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254, asserting eight claims, seven of which attack the imposition of the three death sentences at his

---

[6] Johnson filed an amended 29.15 motion on August 19, 2008. (3rd PCR L.F. 52-176; Resp. Exh. 55).

third and most recent penalty trial and one of which alleges ineffective assistance of counsel at the guilt phase of his trial.

## Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter,* 131 S. Ct. 770, 780 (2011). Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal habeas court shall not grant an application for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding, unless adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under the exhaustion doctrine, a federal habeas court may only grant a writ application if the petitioner has first submitted his claims to the lower state courts and exhausted his remedies there. 28 U.S.C. § 2254(b)(1)(A); *Forest v. Delo*, 52 F.3d 716, 719 (8th Cir. 1995) ("A state prisoner seeking a writ of habeas corpus from a federal court must first fairly present his claims to the state courts in order to meet the exhaustion requirement of 28 U.S.C. § 2254(b).").

Accordingly, this Court shall defer to the decision of the state court unless it finds that the decision was *contrary to* or involved an *unreasonable application of* federal law as determined by the United States Supreme Court or involved an unreasonable determination of facts. The "contrary to" and "unreasonable application of" provisions of Section 28 U.S.C. § 2254(d)(1) have independent meaning and must be analyzed separately. *Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Williams v. Taylor*, 529 U.S. 362, 404 (2000).

5

The "contrary to" provision applies "if the state court arrive[s] at a conclusion opposite to that reached by the Supreme Court on a question of law, or reache[s] a decision contrary to Supreme Court precedent when confronting facts that [are] materially indistinguishable." *Jackson v. Norris,* 651 F.3d 923, 925 (8th Cir. 2011); *see also Williams*, 529 U.S. at 405-06 (finding that a state-court decision will be contrary to clearly established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent").

The "unreasonable application of" provision applies "if the state court identifies the correct governing legal rule[7] from [United States Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. For this provision, it is important to note that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). A federal habeas court may not issue a writ simply because the court concludes that the state-court decision applied clearly established federal law erroneously or because the federal habeas court would reach a different conclusion from the state court. *Williams*, 529 U.S. at 411. Rather, the state court's application must also be objectively unreasonable. *Penry*, 532 U.S. at 793; *Williams*, 529 U.S. at 411-12. A similar decision by another circuit court may be used to establish the reasonableness of a state court decision. *Colvin v. Taylor*, 324 F.3d 583, 588 (8th Cir. 2003). When a state court rules summarily on a claim without explanation of the basis for

---

[7] Furthermore, 28 U.S.C. § 2254(d)(1) restricts the source of the clearly established law to the Supreme Court's "holdings," as opposed to the dicta. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Case 4:11-cv-08001-DGK   Document 30   Filed 02/20/13   Page 6 of 30

its ruling, a habeas petitioner must demonstrate that there was no reasonable basis for that ruling. *Harrington*, 131 S. Ct. at 784.

For both the "contrary to" clause and the "unreasonable application" clause, clearly established federal law is the law as it existed on the date of the last state court ruling on the merits. *Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011). The deference required by 28 U.S.C. §2254(d) applies to the decision of the post-conviction review court as well as to the decision of the Missouri Supreme Court affirming it. *See Weaver v. Bowersox*, 241 F.3d 1024, 1031 (8th Cir. 2001) (giving AEDPA deference to the trial court decision and the Missouri Supreme Court decision affirming it).

Habeas relief can also be granted if the lower state decision "was based on an unreasonable determination of the facts . . ." under 28 U.S.C. § 2254(d)(2). A determination of fact is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). Additionally, the existence of some contrary evidence in the record does not suffice to show that the state court determination of fact was unreasonable. *See id.* at 850. To be entitled to relief based on an unreasonable determination of the facts, a habeas petitioner must show that the determination of the facts was unreasonable by clear and convincing evidence. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

Many of Johnson's claims allege ineffectiveness on behalf of trial counsel and are, therefore, governed by the standard set forth in the Supreme Court's decision in *Strickland v. Washington* which laid out a two-part test for deciding a claim of ineffective assistance of counsel. 466 U.S. 668 (1984). In order to succeed on a claim of ineffective assistance of counsel, a prisoner must first show that "counsel's performance was deficient . . . [meaning] that

counsel made errors so serious the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense . . . [meaning] that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." *Id.* at 687. "An ineffective assistance of counsel claim is a mixed question of law and fact," *McReynolds v. Kemna*, 208 F.3d 721, 723 (8th Cir. 2000), and failure to satisfy both prongs is fatal to the claim. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997). In reviewing claims of ineffective assistance of counsel for federal habeas review, courts must be "doubly" deferential on the issue of counsel's competence. *Harrington*, 131 S.Ct. at 788 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.") (internal citations omitted).

## Discussion

As a preliminary matter, the Court finds Johnson's petition is timely filed under 28 U.S.C. § 2244(d). Accordingly, the Court will review each of Johnson's eight claims to determine whether he is entitled to relief.

### I.  Claim No. 1: Imposition of Death on a Mentally Retarded Defendant

In his first claim, Petitioner Johnson argues that imposing a death sentence on a mentally retarded[8] defendant is contrary to the United States Supreme Court ruling in *Atkins v. Virginia*, 536 U.S. 304 (2002) and denies him of his right to be free from cruel and unusual punishment as

---

[8] As a preliminary matter, the Court notes that the term "intellectual disability" is commonly preferred to "mental retardation," and the American Association on Intellectual and Developmental Disabilities has defined them to the mean the same thing. Moreover, the World Health Organization's International Statistical Classification of Diseases and Related Health Problems and the DSM-V are expected to replace the term "mental retardation" with "intellectual development disorder." However, because the term "mental retardation" and "mentally retarded" are used in the parties' briefing, the relevant case law, and the procedural history of the case, this Court will use those terms here.

guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. Johnson alleges that he proved by a preponderance of the evidence that he is mentally retarded at the third penalty phase of his trial under the *Atkins* standard and the statutory definition set forth in Missouri law, and that the Missouri Supreme Court failed to appropriately apply *Atkins* to the specific facts of his case to overturn his death sentences.

Specifically, Johnson argues that on appeal of his death sentences, the Missouri Supreme Court "ignored the scientific evidence presented at trial, unnecessarily credited the State's misleading cross-examination as evidence, and reached conclusions that are unreasonable in light of the record presented at trial." (Doc. 10, at 36-37).[9] Johnson further maintains that the Missouri Supreme Court plainly ignored the impact of objective science, notably the medically-accepted Flynn effect,[10] on Johnson's scores of mental retardation that were above the mentally retarded range.

The Supreme Court's decision in *Atkins* established that the Eighth Amendment to the United States Constitution prohibits the death penalty for an individual who is mentally retarded. 536 U.S. 304 (2002). While establishing the basic prohibition against the imposition of the death penalty on the mentally retarded, the Court left the mechanisms for establishing mental retardation to the states with the guiding principle that "clinical definitions of mental retardation require not only subaverage intellectual functioning, but also significant limitations in adaptive

---

[9] Insofar as Johnson alleges that the Missouri Supreme Court failed to appropriately find him mentally retarded under Missouri law, his claim must fail because a federal habeas court may not disagree with a state court on its interpretation of its own state law. *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012); *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1995). However, because Johnson notes that he is not challenging the Missouri Supreme Court's application of its own law (Doc. 21, at 9, 10), the Court will not address this argument.

[10] "The Flynn effect, as described by Dr. Keyes at trial, accounts for the gradual inflation of I.Q. scores for individuals that occur over time." (Doc. 10, at 44-45). According to Petitioner, individual I.Q. scores must be evaluated with the Flynn effect taken into account. When taking into account the Flynn effect, Petitioner maintains that "all but one of [Johnson's] reliable I.Q. tests would have been well within the understanding of mental retardation" as set forth by the American Association on Mental Retardation ("AAMR") and the American Psychiatric Association ("APA")." (Doc. 10, at 45).

skills such as communication, self-care, and self-direction that became manifest before age 18." *Id.* at 318.

Consistent with *Atkins* and prevailing clinical definitions, the Missouri General Assembly adopted Mo. Rev. Stat. § 565.030.6 which defines mental retardation as follows:

> [A] condition involving substantial limitations in general functioning characterized by significantly subaverage intellectual functioning with continual extensive related deficits and limitations in two or more adaptive behaviors such as communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure and work, which conditions are manifested and documented before eighteen years of age.

Mo. Rev. Stat. § 565.030.6. Johnson now argues that the Missouri Supreme unreasonably applied the facts developed in state court in denying Johnson's claim for relief based on mental retardation. *See* 28 U.S.C. § 2254(d)(2).

The 28 U.S.C. § 2254(d)(2) standard is a "difficult standard[] for the habeas petitioner to overcome." *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001). While, evaluation of a petitioner's 28 U.S.C. § 2254(d)(2) claim "require[s] meaningful federal court review of the evidentiary record considered by the state courts," *Beck*, 257 F.3d at 901, in considering whether the state court's decision satisfies this deferential standard, "a determination of a factual issue made by a State court shall be presumed to be correct." § 2254(e)(1); *Beck*, 257 F.3d at 901. However, where a state court decision rests upon a determination of facts that lies against the clear weight of the evidence, the decision is, by definition, a decision that is "so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable." *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003) (internal quotation omitted).

In reviewing Johnson's current *Atkins* claim, this Court must now determine whether "viewing the evidence in the light most favorable to the prevailing party (the State), any rational trier of fact could have found [the defendant] *not* mentally retarded by a preponderance of the

evidence." *Hooks v. Workman*, 689 F.3d 1148, 1166 (10th Cir. 2012). Finding that a rational trier of fact could find that Johnson was *not* mentally retarded, this Court denies Johnson's *Atkins'* claim.

The Missouri Supreme Court issued a detailed opinion reviewing the sufficiency of the evidence to support the jury's conclusion that Johnson did not meet his burden of showing mental retardation by the preponderance of the evidence. *Johnson IV*, 244 S.W.3d at 151-156. In this opinion, the Missouri Supreme Court evaluated all the evidence presented on Johnson's intellectual functioning, categories of adaptive behavior, and expert opinions.

In reviewing the evidence considered by the jury at Johnson's third penalty phase of trial, the Missouri Supreme Court first noted problems with the credibility of Johnson's expert witnesses. Notably, the court discussed how the jury heard evidence that Johnson's two experts, Dr. Keyes and Dr. Smith, had a history of always testifying for the defense in death penalty cases. *Id*. at 156. The court also considered evidence that, in his initial evaluation in 2006, Dr. Smith did not find Johnson mentally retarded and that he changed his opinion in 1998 after reviewing tests conducted by Dr. Keyes. *Id*.

The Missouri Supreme Court next focused on conflicting evidence regarding Johnson's I.Q and adaptive functioning. Discussing the results of Johnson's multiple I.Q. tests, the Missouri Supreme Court observed the inconsistency in scores which, in its opinion, undermined Johnson's experts who opined that he was mentally retarded. *Id.* at 152-56. Specifically, the Missouri Supreme Court noted, "the jury also heard evidence that Johnson had multiple I.Q. scores that were above the mentally retarded range and that his intellectual functioning was not subaverage." *Id*. at 156. Moreover, the Missouri Supreme Court considered that the jury had seen a recording of an interview with Johnson ten years after the crime in which he recalled

details about the crime and explained decisions he had made regarding it. *Id*. Finally, the Missouri Supreme Court found that there was sufficient evidence for a jury to conclude that Johnson did not have continual deficits in two or more categories of adaptive behavior. *Id*.

Ultimately, the Missouri Supreme Court concluded that:

> Because of this conflicting evidence, the trial court did not err in overruling Johnson's motions for a directed verdict. Deference should be given to the jury, and viewing the evidence in the light most favorable to the judgment, there was sufficient evidence from which a reasonable juror could have found that Johnson did not prove by a preponderance of the evidence that he suffered from mental retardation.

*Id*. at 155-156.

The evidence on mental retardation in Johnson's case is, as the Missouri Supreme Court held, conflicting. As the United States Supreme Court has instructed, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (internal quotation omitted). This is a "twice-deferential" standard of review since "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial" and a state court's affirmance of the jury's decision on that question must be reviewed only for objective reasonableness. *Id*.

Thus, the question is only whether any rational trier of fact could have reached the same conclusion as the jury in Johnson's case. The Court finds that it could. While no experts testified at trial that Johnson was *not* mentally retarded, and two testified that he was, "expert testimony does not trigger a conclusive presumption of correctness." *Id*. at 2153. Moreover, a jury is free to find that the expert testimony is inadequate to establish mental retardation. *See id*. Because there was sufficient evidence supporting a finding that Johnson was not mentally retarded, including prior I.Q. scores, adaptive behavior, video footage of him subsequent to the

12

murders, and credibility issues surrounding Johnson's experts, the Missouri Supreme Court's decision upholding Johnson's jury verdict imposing the death penalty was not objectively unreasonable under 28 U.S.C. § 2254(d).

## II.  Claim No. 2: Counsel's Failure to Adequately Investigate and Present Evidence of Mental Retardation

In his second claim, Johnson alleges trial counsel was ineffective during his third penalty phase for not adequately investigating and presenting evidence in support of a mental retardation defense.  Specifically, Johnson argues that his court-appointed counsel failed to thoroughly investigate their primary witness, Dr. Denis Keyes, who was charged with establishing mental retardation but who, more than a year earlier, had been judicially determined to be "biased" and "unreliable" in his testimony before the Circuit Court of St. Louis County, Missouri.  *See Goodwin v. State*, 191 S.W.3d 20, 32-33 (Mo. 2006) (discussing the motion court's rejection of Dr. Keyes' expert testimony).  Moreover, Johnson alleges that despite trial counsel's awareness that Dr. Keyes was unreliable, difficult,[11] lacked clinical expertise and, at the time of his testimony, was not licensed to practice in any state, counsel chose to move forward with his testimony.[12]

---

[11] In seeking a continuance of the trial, counsel informed the trial court of its difficulties with Dr. Keyes, notifying the court that Dr. Keyes was "eccentric," refused to come to trial any day but Friday, and was "dedicated more to his students than he is to any case he's working on."  (3rd Sen. Tr. 59-61; Resp. Exh. 42).

[12] Respondent argues that Johnson appears to present two claims here: first, that trial counsel was ineffective for not presenting additional evidence on his mental retardation, and second, that trial counsel was ineffective for choosing Dr. Keyes as opposed to another, more qualified expert.  Johnson advanced the first argument on appeal to the post-conviction review court which rejected this claim on the merits after an evidentiary hearing. Only the narrower claim, that counsel erred in choosing Dr. Keyes as its expert, was presented to the Supreme Court, and, therefore, is the only claim preserved for review by this Court.  *See Arnold*, 675 F.3d at 1086-1087 (holding that claims raised in post-conviction motion but not the appeal of the denial of that motion are barred from review, and alleged ineffective representation by post-conviction appellate counsel cannot be cause to excuse the default); *Flieger*, 16 F.3d at 885 (finding that a habeas petitioner must present the same factual and legal theory of claim to a federal court that he preserved in state court litigation).  Petitioner does not contest that the only issue properly before this Court is whether Johnson's trial counsel provided ineffective assistance of counsel when they chose to present the testimony of Dr. Keyes as the primary mental health expert.  (Doc. 21, at 22).

13

Johnson's claim of ineffective assistance of counsel is governed by the Supreme Court's decision in *Strickland v. Washington*. 466 U.S. 668 (1984). Johnson argues that the Missouri Supreme Court correctly identified the appropriate *Strickland* standard but applied the standard in an unreasonable manner in light of the facts of his case. Most notably, Johnson alleges that the Missouri Supreme Court erred in finding that trial counsel's decision to utilize Dr. Keyes as its expert was not deficient performance and did not prejudice him.

In reviewing Johnson's claim for ineffective assistance of counsel, this Court must consider the highly deferential standard of Strickland in conjunction with the highly deferential standard of 28 U.S.C. § 2254(d). *See Harrington*, 131 S. Ct. at 785-792 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.").

Here, the Missouri Supreme Court rejected Johnson's claim of ineffective assistance of counsel based on Dr. Keyes' testimony, finding that the choice to use Dr. Keyes as an expert witness was a reasonable strategic decision. *Johnson V*, 333 S.W.3d at 463-466. First, the Missouri Supreme Court noted that "[g]enerally, the selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable." *Id*. at 463-64 (citing *State v. Kenley,* 952 S.W.2d 250, 266 (Mo. 1997) (en banc)). The Missouri Supreme Court went on to discuss Dr. Keyes qualifications, expertise, and credibility including (1) his Ph.D. in special education; (2) citation to his work by the United States Supreme Court in *Atkins v. Virginia*; and (3) the fact that another expert changed his opinion after learning of Dr. Keyes' finding that Johnson was mentally retarded. *Id*. at 464-65. The Missouri Supreme Court also

noted that the jury was unaware of the *Goodwin* opinion, issued after jury selection, finding Dr. Keyes' testimony unpersuasive in another case. *Id.* It further distinguished Dr. Keyes' testimony in Johnson's case from that which was rejected in *Goodwin*, noting that in Johnson's case, Dr. Keyes' testimony was at least "arguably . . . based on objective factors." *Id.* at 464.

The Missouri Supreme Court also rejected Johnson's arguments that Dr. Keyes' insistence on scheduling his testimony around his teaching schedule and his correcting himself during testimony indicated that he was unprepared or unreliable. *Id.* Specifically, the court noted that each time Dr. Keyes misspoke, he corrected his misstatements either on his own or with the assistance of counsel. *Id.*

Having provided ample reasoning for its decision to deny Johnson's claim for ineffective assistance of counsel on this claim, this Court finds that the Missouri Supreme Court did not unreasonably apply the *Strickland* standard to facts of this case. Accordingly, this Court finds that the Missouri Supreme Court's decision to reject Johnson's ineffective assistance of counsel claim with regard to Dr. Keyes' expert testimony was not contrary to clearly established federal law or an unreasonable determination of facts in light of the evidence presented in state court.

### III.      Claim No. 3: Counsel's Failure to Suppress Incriminating Statements

In Johnson's third claim, he argues that defense counsel at his third penalty trial was ineffective for failing to object to the State's introduction of a videotaped interrogation during which Johnson was asked about facts of the case. This failure, Johnson argues, violated his Fifth, Sixth, and Fourteenth Amendment rights.

Prior to Johnson's third penalty phase trial, the trial court granted the State's request, over Johnson's objections, to have private psychologist Dr. Gerald Heisler interview Johnson for the purpose of evaluating his claim of mental retardation according to RSMo § 565.030.6. The trial

court also ordered that Dr. Heisler videotape the examination but that he not make Johnson aware of the recording. Johnson now argues that Dr. Heisler's examination went beyond the scope of the trial court's order to "evaluate defendant's claim of mental retardation under Section 565.030.6, Supp. 2003, RSMo," (3rd L.F. 209; Resp. Exh. 46), and improperly focused on the circumstances of the convicted offenses.

Johnson also maintains that his trial counsel was ineffective in failing to object to the jury's viewing of the entire taped interview. Specifically, Johnson alleges that admitting Dr. Heisler's full interview, including Johnson's admissions about the circumstances of the crime (e.g., that he acted alone and used a gun and hammer), violated his Fifth Amendment rights against self-incrimination because he was not advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) prior to the interview. In support of his argument, Johnson cites *Estelle v. Smith*, 451 U.S. 454 (1981). In *Estelle*, the United States Supreme Court held that admitting a court-ordered psychiatrist's evaluation of the defendant at the penalty phase, based on statements made about his criminal conduct, violates a defendant's Fifth Amendment rights if he is not advised of his rights pursuant to *Miranda v. Arizona*. *Id*. Specifically, the Supreme Court held that "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Id*. at 468.

Like claim number two, Johnson's claim here is governed by the standard set forth in *Strickland* which requires a showing that (1) counsel's representation "fell below and objective standard of reasonableness" and (2) the "deficient performance prejudiced" him. *Strickland*, 466 U.S. at 687-88.

In considering Johnson's claim, the Missouri Supreme Court first noted that Johnson's penalty phase counsel did not object to the tape being shown to the jury because she believed it would show Johnson to be mentally retarded, and, therefore, she could use the tape to help prove her case. *Johnson V*, 333 S.W.3d at 469. The Missouri Supreme Court found this to be a reasonable trial strategy. *Id*. (citing *Kenley,* 952 S.W.2d at 266).

The Missouri Supreme Court also determined, as the post conviction review court had already held, that any objection to the tape on behalf of Johnson's counsel would have been without merit because, under existing Missouri Supreme Court precedent, Johnson waived his claim against self-incrimination by putting his mental condition at issue. *Id*. at 469. In reaching this conclusion, the Missouri Supreme Court referenced its existing precedent in *State v. Copeland*, 928 S.W.3d 828, 839 (Mo. 1996) (en banc) and *State v. Thompson*, 985 S.W.2d 779, 786 (Mo. 1999) (en banc), which it held were distinguishable from *Estelle v. Smith*, 451 U.S. 454 (1981), cited by Johnson, because the defendant in *Estelle*, did not initiative a psychiatric evaluate, introduce any psychiatric evidence, or otherwise put his psychiatric condition at issue. *Johnson V*, 333 S.W.3d at 469-470.

This Court agrees with the Missouri Supreme Court's finding that Johnson's counsel did not act in an objectively unreasonably manner in not objecting to the admission of all or part of his videotaped interview with Dr. Heisler and that Johnson was not prejudiced by this decision. Furthermore, because the Missouri Supreme Court distinguished Johnson's case from *Estelle*, specifically noting how Johnson's case was similar to existing Missouri Supreme Court precedent, its decision that any objection would have been without merit is not clearly contrary to United States Supreme Court precedent. The Missouri Supreme Court's rejection of Johnson's

claim is a reasonable and sound application of *Strickland* and must be upheld under 28 U.S.C. § 2254(d).

## IV.    Claim No. 4: Counsel's Failure to Object to a State Expert's Mental Retardation Opinion

In his fourth claim, Johnson alleges that defense counsel during his third penalty phase was ineffective for failing to object to the cross-examination of defense experts Dr. Smith, Dr. Keyes, and Dr. Parwatikar on their views of the court-appointed psychologist's conclusion that Johnson was not mentally retarded.

Prior to the third penalty phase trial, Johnson's counsel requested that the trial court appoint an independent mental health examiner for the purpose of determining whether, as a matter of Missouri law, Johnson was competent to proceed. (3rd L.F. 238-39; Resp. Exh. 46). The trial court agreed and ordered the following: "Mental exam ordered [in] accordance with order signed this date. PA to comply with 552.045." (3rd L.F. 240; Resp. Exh. 46). The trial court subsequently retained the services of Dr. Kline of the Mid-Missouri Mental Health Center to conduct the competency examination. (3rd PCR Exh. 57 at 1-2). Dr. Kline examined Johnson and determined that he was mentally competent to proceed as ordered by the Court. (3rd PCR Exh. 57 at 7-8). Dr. Kline also opined that Johnson was not mentally retarded. (3rd PCR L.F. 351; Resp. Exh. 57).

Although Dr. Kline did not testify during Johnson's third penalty phase and his report was not admitted as an exhibit, the State cross-examined defense counsel witnesses, Dr. Parwatikar, Dr. Smith, and Dr. Keyes, without objection about Dr. Kline's opinion that Johnson was not mentally retarded. Johnson now argues that his counsel was ineffective for failing to

object to this cross-examination as a violation of § 552.020.14 RSMo[13] and his right to due process.

Again, the Court evaluates Johnson's claim by the standard set forth in *Strickland* which requires a showing that (1) counsel's representation "fell below and objective standard of reasonableness" and (2) the "deficient performance prejudiced" him. *Strickland*, 466 U.S. at 687-88.

Both the post-conviction review court and the Missouri Supreme Court rejected Johnson's argument that questioning regarding Dr. Kline's report violated § 552.020.14 RSMo. Specifically, the Missouri Supreme Court found that the questions regarding Dr. Kline's findings do not "seek to elicit information about any statements made by Johnson or information received by Dr. Kline." *Johnson V*, 333 S.W. 3d 459, at 470. Rather, the questions were directed toward Dr. Kline's opinion as to whether Johnson had mental retardation. *Id*. Additionally, the Missouri Supreme Court found that "the testimony adduced was not admitted in evidence on the issue of guilt," and, therefore, did not violate § 552.020.14. *Id*.

This Court may not re-examine the Missouri Supreme Court's interpretation and application of Missouri law. *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991). Therefore, this Court finds that the Missouri Supreme Court's rejection of Johnson's ineffectiveness claim on the basis of § 552.020.14 is an objectively reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), and Johnson's claim must be denied on this ground.

_____

[13] RSMo Section 552.020.14 provides that: "No statement made by the accused in the course of any examination or treatment pursuant to this section and no information received by any examiner or other person in the course thereof, whether such examination or treatment was made with or without the consent of the accused or upon his motion or upon that of others, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding then or thereafter pending in any court, state or federal. A finding by the court that the accused is mentally fit to proceed shall in no way prejudice the accused in a defense to the crime charged on the ground that at the time thereof he was afflicted with a mental disease or defect excluding responsibility, nor shall such finding by the court be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

Johnson also argues that allowing testimony regarding Dr. Kline's examination violated his constitutional rights. Respondent maintains that this argument is barred because it was not raised during Johnson's state court appeals and therefore cannot be considered by this Court. *See Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999); *Flieger v. Delo*, 16 F.3d 878, 884-85 (8th Cir. 1994).

"A state prisoner seeking a writ of habeas corpus from a federal court must first fairly present his claims to the state courts in order to meet the exhaustion requirement of 28 U.S.C. § 2254(b)." *Forest,* 52 F.3d at 719. This requires that the "same factual grounds and legal theories asserted in the prisoner's federal habeas petition have been properly raised in the prisoner's state court proceedings." *Krimmel v. Hopkins*, 56 F.3d 873, 875-76 (8th Cir. 1995). More specifically, the Eighth Circuit has held that "to satisfy the fairly presented requirement, [the petitioner is] required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in the Missouri state court." *Abdullah v. Groose*, 75 F.3d 408, 411-12 (8th Cir. 1996) (internal quotation omitted).

In his appeal before the Missouri Supreme Court, Johnson argued that:

The motion court clearly erred in overruling Ernest's postconviction motion because he received ineffective assistance of counsel in violation of his rights to due process, freedom from cruel and unusual punishment, and effective assistance of counsel, U.S. Const. Amends. VI, VIII, and XIV, in that counsel failed to object to evidence of statements Ernest made to Dr. Kline during a competency to proceed evaluation, to Kline's opinion Ernest was not mentally retarded based on Ernest's statements and I.Q. scoring, and to closing argument that Ernest was not mentally retarded based on all these matters because §552.020.14 prohibited admission and use of these matters and Ernest was prejudiced because hearing the competency evaluator opinion that Ernest was not mentally retarded with his basis for that opinion and related argument gave undue weight to it and predisposed the jury to find Ernest was not mentally retarded.

20

Because Johnson referenced his constitutional rights to due process, freedom from cruel and unusual punishment, and effective assistance of counsel, the Court finds that he fairly presented his federal constitutional claims in state court such that he can raise the issue on appeal. *See Abdullah*, 75 F.3d at 411-12.

However, the Missouri Supreme Court previously rejected these arguments. *Johnson V*, 333 S.W. 3d 459, at 470-71. Because the Missouri Supreme Court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of facts in light of the evidence presented, this Court denies relief on these grounds. *See Johnson v. Williams*, 568 U.S. __ (2013) (holding that federal courts should presume, subject to rebuttal, that a claim was adjudicated on the merits where a state court "rules against a defendant in an opinion that rejects some of the defendant's claims but does not address a federal claim," and should accordingly apply § 2254's deferential standard of review rather than de novo review).[14]

## V.      Claim No. 5: Burden of Proof for Mental Retardation

In claim five, Johnson argues that it was constitutional error for the state trial court to require him to prove his mental retardation during the third penalty phase by a preponderance of the evidence rather than requiring the prosecution to prove lack of retardation beyond a reasonable doubt.

In *Atkins v. Virginia,* the United States Supreme Court held that it is unconstitutional to execute a mentally retarded person. 536 U.S. 304 (2002). However, the Court did not provide procedural guidance for determining mental retardation, instead deferring to states to develop appropriate means of enforcing this constitutional sentencing restriction. *Atkins,* 536 U.S. at 317.

---

[14] In *Johnson v. Williams*, the United States Supreme Court held that there is a rebuttable presumption that a claim was adjudicated on the merits. 568 U.S. ___ (2013). The Court finds that Petitioner has failed to rebut this presumption here.

21

The *Atkins* decision was also silent as to which party should bear the burden of proving mental retardation or by what standard.

In *Apprendi v. New Jersey,* the Supreme Court provided states with some general guidance as to the proper adjudication of "sentencing factors." 530 U.S. 466 (2000). In *Apprendi,* the Court analyzed a New Jersey statute that allowed the range of punishment for certain criminal offenses to be increased if the trial judge found, by a preponderance of the evidence, that the offense was a "hate crime." *Apprendi*, 530 U.S. at 468-69. In rejecting this sentencing scheme, the Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt."[15] *Id.* at 490. The Court also noted that its holding should apply regardless of whether a state characterizes fact findings as "elements" or "sentencing factors" if the "required finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Id.* at 492-94.

In *Ring v. Arizona,* the United States Supreme Court considered a case where the defendant challenged Arizona's capital punishment procedures that allowed the trial judge, sitting alone, to determine the presence of aggravating or mitigating factors required for the imposition of the death penalty.[16] 536 U.S. 584 (2002). Applying *Apprendi*, the Supreme Court held that when a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact must be found by a jury beyond a reasonable doubt. *Ring,* 536 U.S. at 602.

---

[15] The *Apprendi* Court observed that "[a]ny possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding." *Apprendi v. New Jersey*, 530 U.S. 466, 478 (2000).

[16] This practice was previously upheld in *Walton v. Arizona,* 497 U.S. 639 (1990). The United States Supreme Court held that *Walton* could not be reconciled with *Apprendi,* and thus *Walton* should be overruled. *Ring v. Arizona,* 536 U.S. 584 (2002).

22

In considering Johnson's appeal on this ground, the Missouri Supreme Court analyzed *Atkins* and *Ring*, finding that those cases do not require a jury finding of lack of mental retardation beyond a reasonable doubt. Furthermore, the Missouri Supreme Court found that it is permissible under United States Supreme Court precedent for Missouri to place the burden on the defendant to prove mental retardation by a preponderance of the evidence. *Johnson IV*, 244 S.W.3d at 150-151. Specifically, the Missouri Supreme Court held that a determination that a defendant is mentally retarded "is not a finding of fact that increases the potential range of punishment," but instead is a finding of fact "that removes the defendant from consideration of the death penalty." *Johnson IV*, 244 S.W.3d at 151. Accordingly, the court found that *Ring* does not apply to the issue of mental retardation. *Id*.

The Missouri Supreme Court's decision in *Johnson IV* is supported by several other federal circuit opinions. *Hill v. Humphrey*, 662 F.3d 1335 (11th Cir. 2011) (holding that Georgia's statutory requirement that a capital defendant bear the burden of proving mental retardation beyond a reasonable doubt is not contrary to clearly established law); *Walker v. True*, 399 F.3d 315 (4th Cir. 2005) (rejecting petitioner's claim that the Supreme Court's decision in *Ring* requires Virginia to prove lack of mental retardation to a jury); *In re Johnson*, 334 F.3d 403, 405 (5th Cir. 2003) (finding that "the absence of mental retardation is not an element of the sentence any more than sanity is an element of an offense"). Moreover, as the Missouri Supreme Court noted, at the time of its decision, no state required the prosecution to prove lack of mental retardation beyond a reasonable doubt and thirty states placed the burden on the defendant to show mental retardation. *Johnson IV*, 244 S.W.3d at 151 n.3.

Because the Missouri Supreme Court's decision is supported by multiple states and federal courts of appeal, and because this Court finds that the law in this area is currently

23

unsettled such that there is no clearly established United States Supreme Court precedent, this Court finds that the Missouri Supreme Court's rejection of Johnson's burden of proof claim is neither contrary to nor an unreasonable application of clearly established federal law. *See Colvin*, 324 F.3d at 588 ("We have held, however, that in the habeas context, the objective reasonableness of a state court's application of Supreme Court precedent maybe established if our sister circuits have similarly applied the precedent."). Accordingly, Johnson's claim is denied.

**VI.    Claim No. 6: Counsel's Failure to Introduce Dr. Bernard's Deposition or Direct Testimony**

Johnson's sixth claim alleges that defense counsel at the third penalty phase was ineffective for not calling, or at minimum presenting the deposition testimony of, Dr. Bernard who, prior to Johnson's first guilt phase trial, found that he was mildly mentally retarded.

The post-conviction court and the Missouri Supreme Court both rejected Johnson's argument that defense counsel should have sought to admit Dr. Bernard's deposition as evidence for the jury to consider.  At the evidentiary hearing before the post-conviction review court, Johnson's counsel testified that they provided Dr. Bernard's deposition to the experts who testified during the penalty phase, and that while counsel discussed admitting the deposition itself, they decided not to do so.  (3rd PCR L.F. 406-407; Resp. Exh. 57).  They could not remember the basis for this decision.  *Id.*  Accordingly, the post-conviction review court found that Johnson had not overcome the presumption that defense counsel's decision was not a reasonable trial strategy. *Id.*  The post-conviction review court also found that the deposition would not have been admissible for the truth of the matters asserted therein, and that even if it were admissible for the truth of the matters it asserted, it would have been cumulative of testimony by defense experts who testified that Johnson was mentally retarded and testified

about Dr. Bernard's evaluation, findings, and conclusions. *Id.* at 407. Accordingly, the post-conviction review court found that admitting the deposition would have had no effect on the jury's determination of Johnson's sentence. *Id.*

The Missouri Supreme Court also rejected Johnson's claim on similar grounds, concluding that introduction of Dr. Bernard's deposition testimony did not provide "any new or mitigating evidence" and would have merely been cumulative of the testimony of Dr. Smith and Dr. Keyes who both refuted the prosecutor's argument that Johnson was not mentally retarded. *Johnson V*, 333 S.W. 3d at 468. Accordingly, the Missouri Supreme Court found that Johnson was not prejudiced by counsel's failure to admit the deposition into evidence. *Id.* This Court finds that the Missouri Supreme Court's denial of Johnson's claim on this ground is a reasonable application of *Strickland* and this Court denies relief on this claim.

Finally, this Court cannot consider Johnson's present argument that Dr. Bernard herself should have been called as a witness to present live testimony during the third penalty phase of trial. This argument goes beyond the claims made by Johnson in state court and is, therefore, procedurally barred.[17] *See Flieger*, 16 F.3d at 885.

## VII. Claim No. 7: Counsel's Failure to Investigate and to Call Drs. Parwatikar and Bernard

Johnson's seventh claim alleges that guilt phase counsel[18] were ineffective for not fully investigating their experts and presenting testimony in support of a defense that Johnson's diminished capacity prevented him from deliberating on the murders.

Prior to Johnson's guilt phase trial, defense counsel engaged two mental health experts, Dr. Parwatikar and Dr. Bernard, to evaluate Johnson's overall mental state and capabilities. Dr.

---

[17] In his Traverse, Johnson concedes that "To the extent that Johnson's initial claim dealt with the failure to present live testimony, Johnson agrees that limited issue is barred from consideration." (Doc. 21, at 36-37).
[18] Johnson was represented at trial by Nancy McKerrow and Janice Zembles. *State v. Johnson*, 968 S.W. 2d 686, 695 (1998).

Parwatikar, a psychiatrist, was hired to evaluate whether Johnson was competent to proceed and to determine whether there was a basis for an insanity defense. (1st PCR Tr. 8; Resp. Exh. 13). Dr. Parwatikar concluded that Johnson did not suffer from any mental disease or defect and was competent to stand trial. *Id*. at 10-11; *see also Johnson I*, 968 S.W. 2d at 695. He did not evaluate guilt-phase issues involving a mental retardation diminished capacity defense. (3rd Sen. Tr. 1295-96; Resp. Exh. 43). Dr. Parwatikar did not testify at Johnson's guilt phase trial. (1st PCR Tr. 16; Resp. Exh. 13).

Dr. Bernard was hired to perform a psychological evaluation of Johnson to assess intellectual and cognitive functioning. *Id*. at 53-55; *see also Johnson I*, 968 S.W. 2d at 696. Dr. Bernard reported to Johnson's counsel after the tests had been administered, but before they had been scored, and counsel did not contact Dr. Bernard to follow-up about the results of the tests. (1st PCR Tr. 59; Resp. Exh. 13; *see also Johnson I*, 968 S.W. 2d at 696). No member of Johnson's guilt phase defense team spoke with Dr. Bernard after she performed her initial tests on Ernest. (1st PCR Tr. 47, 59-60; Resp. Exh. 13). Like Dr. Parwatikar, defense counsel did not ask Dr. Bernard to testify at trial. *Id*. at 66-67.

Johnson now argues that his guilt phase counsel was ineffective for failing to consult with the retained experts and failing to call them to testify at trial. Specifically, Johnson alleges that counsel was ineffective for (1) not asking Dr. Parwatikar to evaluate guilt-phase issues involving diminished capacity[19] and (2) not consulting with Dr. Bernard after she tested Johnson regarding a diminished capacity or no deliberation defense.

---

[19] The difference between diminished capacity and "not guilty by reason of mental disease or defect" are two different concepts. "Although 'not guilty by reason of mental disease or defect excluding responsibility' (NGRI) and 'diminished capacity' are often confused, they are separate doctrines. This distinction is clearly set forth in the comments to the Missouri Approved Instructions relating to diminished capacity: 'The use of evidence of mental disease or defect negating the existence of a required culpable mental state is not the same as the affirmative defense of lack of responsibility by reason of mental disease or defect. (See MAI–CR 3d 306.02).' MAI–CR 3d 308.03, Note 3. 'Evidence of mental disease or defect negating a culpable mental state is simply evidence that the defendant did

Johnson's argument is based on testimony provided by Dr. Parwatikar and Dr. Bernard at Johnson's first post-conviction review hearing. At this hearing, Dr. Parwatikar testified that although he did not consider diminished capacity in his initial interview with Johnson, had he been provided with additional information concerning Johnson's social history and background, he would have explored the concept further. *Id*. at 35. Dr. Bernard also testified at the hearing regarding her examination of Johnson. Although she never relayed her findings to Johnson's lawyers, Dr. Bernard testified at the post-conviction hearing that based upon her psychological and intelligence tests, Johnson likely had a learning disability, was mildly mentally retarded, and suffered from cocaine intoxication on the evening of the crime.[20] *Id*. at 59-60; *see also Johnson I*, 968 S.W. 2d at 696. Dr. Bernard further testified that after receiving additional information regarding Johnson's life history, she would agree with other experts, including Dr. Smith, that Johnson also had diminished capacity due to mental retardation.[21] (1st PCR Tr. 64; Resp. Exh. 13). Finally, Dr. Bernard noted that she was unable to complete all of her testing because of time restraints at the prison, but that she had expected to be asked to testify at trial and would have been willing to do so. *Id*. at 53-58, 66-67.

Johnson's claim regarding Dr. Parwatikar is without merit. Both the post-conviction review court, after an evidentiary hearing, and the Missouri Supreme Court found that Johnson's claim of ineffective assistance of counsel for failing to call Dr. Parwatikar to testify or further investigate his opinion regarding Johnson's diminished capacity was without merit. *Johnson I*, 968 S.W.2d at 695-697. At the post-conviction review evidentiary hearing, Dr. Parwatikar

not have the culpable mental state that is an essential element of the crime.'" *State v. Knight*, 355 S.W.3d 556, 559-560 (Mo. App. S.D. 2011).

[20] In reviewing Johnson's claim, the Missouri Supreme Court noted that at the motion hearing after Johnson's first appeal, Dr. Bernard testified that "Johnson was in the first or second percentile—the borderline mentally retarded range—meaning that ninety-eight percent of those tested perform at a higher level." *Johnson I*, 968 S.W. 2d at 696.

[21] Specifically, Dr. Bernard testified that having a social history would have been helpful to her evaluation because it would "have great bearing in terms of mitigating factors in [Johnson's] development, and in the understanding of his slow cognitive performance and neuropsychological impairment." (1st PCR Tr. 55; Resp. Exh. 13).

testified that based on the information available to him prior to trial, he did not find that Johnson suffered from diminished capacity. (1st PCR L.F. 35; Resp. Exh. 19). Guilt phase counsel also testified at the hearing that she made a strategic decision not to call Dr. Parwatikar at the guilt phase. *Id*. at 46.

The Missouri Supreme Court reiterated these findings, noting that Dr. Parwatikar found that Johnson suffered from no mental disease or defect and that counsel decided not to call Dr. Parwatikar as a witness based on this finding. *Johnson I*, 968 S.W.2d at 695-697. The Missouri Supreme Court further noted that Dr. Parwatikar testified that he could not aid in the guilt phase of Johnson's defense and that additional background information would not have changed his testimony but rather only bolstered it. *Id*. at 696.

Johnson's claim of ineffective assistance of counsel regarding Dr. Bernard is also without merit. The Missouri Supreme Court rejected Johnson's claim on this ground, noting that even if Johnson's counsel had followed up with Dr. Bernard about the results of her tests, the evidence would not have provided a defense to murder in the first degree because voluntary cocaine intoxication is not a defense. *Johnson I*, 968 S.W.2d at 696.

Johnson argues that the Missouri Supreme Court's reasoning on this matter is insufficient to address his claim because the opinion does not analyze how Dr. Bernard's testimony may have been helpful regarding mental retardation and a diminished capacity defense. Yet, this argument excludes an important component of the Missouri Supreme Court's ruling which also held that "the absence of Dr. Bernard's testimony did not prejudice Johnson in light of the overwhelming amount of evidence that Johnson did knowingly cause the deaths of the three victims after deliberation." *Johnson I*, 968 S.W.2d at 696. This statement addressed the prejudice prong of *Strickland*, implying that even if Dr. Bernard had testified regarding mental

retardation and diminished capacity, the evidence that Johnson knowingly caused the deaths of the three victims after deliberation was so strong that her testimony would not have changed the jury's decision.

Accordingly, the Missouri Supreme Court fully addressed Johnson's argument regarding diminished capacity, and this determination was not unreasonable in light of the evidence presented in state court. The Missouri Supreme Court's finding is, therefore, a reasonable application of the prejudice prong of *Strickland*, and Johnson's claim on this ground is denied.

### VIII. Claim No. 8: Counsel's Failure to Introduce Evidence of A Statutory Mitigating Factor

In his final claim, Johnson argues that his third penalty phase counsel was ineffective for failing to present a theory of defense predicated on the idea that Johnson committed the crimes while acting under the substantial domination of another. During the penalty phase of a capital prosecution, Missouri law provides for a statutory mitigating circumstance if the defendant acted under the substantial domination of another person. Mo. Rev. Stat. § 565.032.3(5). Johnson now argues that this mitigating factor was not pursued at the third penalty phase trial of his trial despite substantial evidence that his girlfriend's son, Rod Grant, played a significant role in the crime.

Evaluating this claim under the *Strickland* standard, the Court finds that counsel's strategic decision to not present evidence that Johnson acted under the substantial dominion of another was not deficient performance and did not prejudice him. *Strickland*, 466 U.S. at 687-88. As both the post-review motion court and the Missouri Supreme Court held in rejecting this claim on review, Johnson's counsel made a strategic decision at the third penalty phase not to rehash the guilt phase evidence in support of the theory now advanced by Johnson and instead to emphasize mental retardation. *Johnson V*, 333 S.W.3d at 466-467. Furthermore, as the Missouri

Supreme Court noted, the available evidence would not have supported a theory that Johnson was under the substantial domination of Rod Grant, but could only have supported the theory that Rod Grant was also at the murder scene, a theory contrary to facts stipulated by the defense at the penalty phase. *Id*. Accordingly, the decision of the Missouri Supreme Court in denying Johnson's appeal on this claim is reasonable and must be upheld.

### IX. Certificate of Appealability

Under Fed. R. App. P. 22, an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. For § 2254 proceedings, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, Rules Governing § 2254 Cases in United States District Courts. The COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 326 (2003), *citing Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Here, Petitioner has not made the requisite showing. Therefore, a certificate of appealability shall not issue.

**IT IS SO ORDERED.**

Dated: February 20, 2013                              /s/ Greg Kays
                                                      GREG KAYS,
                                                      UNITED STATES DISTRICT JUDGE

30